## W. D. BIBB v. HUGH WILSON.

1. VENDOR AND VENDEE: RESCISSION OF CONTRACT: DUTY OF VENDOR.—A vendor, who covenants by his title bond to make a conveyance of the land to the vendee, upon the payment of all the purchase-money, but reserves the right to rescind the contract if a good title cannot be procured—agreeing in that event to refund the purchase-money which has been received—cannot maintain a bill for a rescission of the contract, upon the ground that a good title cannot then be made, without showing that he has used reasonable diligence to procure it, and that his efforts have been fruitless.

2. CHANCERY PLEADINGS: PARTIES.—The Chancery Court will not entertain a bill which, owing to a defect in the parties, can administer but partial justice to the persons interested; and hence, if by the terms of a contract for the sale of land, it may be rescinded upon certain conditions, the vendee paying the vendor a stipulated rent, a bill for rescission cannot be maintained by the assignee of the

vendor against the vendee, without making the person then entitled to receive the rent, a party to the suit.

APPEAL from the Superior Court of Chancery, Hon. Charles Scott, chancellor.

W. D. Bibb, the plaintiff in error, filed his bill in the Superior Court of Chancery, against the appellee and the heirs of John Martin, deceased, in which he charged, in substance, that the appellee and said John Martin and others, were at one time partners as commission merchants, in New Orleans, in the State of Louisiana, under the firm name of Martin, Pleasants & Co.; that the said firm, about the year 184–, became involved and embarrassed with debt, and suspended business; that the said partners, for the purpose of liquidating and settling up their business, divided out their assets among themselves; that the assets in Mississippi were thus allotted to said John Martin and the defendant, Hugh Wilson; that among these assets was a debt due from one Coffee, and in part settlement of which said Coffee conveyed to said Martin, for the use of himself and Wilson, a tract of land lying in Rankin county, in the State. The bill further charged, that for satisfactory reasons, the said Wilson and Martin had the said land conveyed to Martin, though they were both equally interested in it. The bill further charged, that in 1846, one Elijah Jones bought the said tract of land from said Martin, at the price of $6000, to be paid in annual instalments, for which Jones executed his note, and Martin executed to Jones his title-bond. The title-bond was made an exhibit to the bill, and after reciting the penalty, the sale of the lands, and the execution of the notes by Jones for the purchase-money, was conditioned as follows:—

" Now, if the said John Martin shall make or cause to be made to the said Elijah Jones, a good and sufficient title to the land so sold to him as aforesaid, upon the payment to him by said Jones, of the sum of six thousand dollars, with interest as above mentioned; or if in case said Martin shall fail, or be unable to make or cause to be made to said Jones a good and sufficient title to said land, upon the receipt of the purchase-money by him, he the said Martin

VOL. II.—40

shall refund to said Jones the amount of money paid by said Jones to him, with six per cent. per annum interest thereon from the date of the payment to him; said Jones allowing said Martin, in case of such re-payment, an annual rent for said plantation of the sum of three hundred and sixty dollars, for the time Jones may occupy it, * * * then the above obligation is to be void, otherwise to be and remain in full force and virtue.

JOHN MARTIN, [ L. S. ]"

The bill further charged that in 184–, the said Jones died, and his heirs proposed to said Martin to rescind the bargain, which Martin refused to do, unless a good purchaser could be found to be substituted in their stead.    That thereupon the complainant wrote to Martin and Wilson on the subject, and proposed to have himself substituted in the place of said Jones's heirs; that the defendant replied to his letter in November, 1847, which is made an exhibit to the bill, and contains an acknowledgment that he and Martin are jointly interested in the bargain with Jones, and refers complainant to W. C. Harper, as their agent, and fully authorized to act in the premises.    Soon afterwards complainant, by an agreement entered into with said Harper, who acted in the name of Martin as his agent, was substituted as a purchaser instead of Jones, he undertaking to comply with Jones's promises, and Martin agreeing to perform to complainant his covenant with said Jones.    The bill charges that the arrangement was made by Harper, acting for both Wilson and Martin.

The bill further charges, that at the time the contract was made between Martin and Jones, there was a bill pending in the Superior Court of Chancery, in which Coffee's and Martin's title to the land was in litigation, and that Martin assured Jones that no part of the payment of the purchase-money should be coerced until this suit was determined; that the suit is still pending and undetermined, and that by reason thereof, a perfect and good title cannot be made by Martin or his heirs to complainant; that it is uncertain how said suit will be determined, and who will gain the land; that the purchase-money for the land has all been paid by complainant, except about $2400, which is now in judgment in favor

of Wilson, to whom the note had been assigned by Martin, in virtue of their agreement of joint interest in the land before stated.

The bill further charges, that Martin is dead, and his estate insolvent, and that his heirs are non-residents, and some of them minors, and that no administration has been granted on his estate in this State, and that if he is coerced to pay the $2400 balance of purchase-money, he will not be able to recover it in case Martin's title to the land should be adjudged bad. The bill offers to pay the balance of the purchase-money, if Wilson will join the heirs of Martin in executing a warranty deed to the land, or if Wilson will become bound in a bond to make a good title to the same; and prays that he be required to do so, or if that is not done, that he be enjoined from the collection of the said judgment until the determination of the chancery suit before referred to, or until defendant can make a good title to the land.

The defendant Wilson answered, admitting the charges of the bill in relation to the land trade with Jones, and the substitution of complainant as a purchaser, and that he was interested therein as stated, except that he was not bound to warrant the title, and stating that his only obligation in this respect was a written promise made by him to Martin to refund one-half of the purchase-money received, in case the contract should be rescinded on account of a defect of title; and he denied his liability to any person further than that. He admitted Martin's death, but denied that his estate was insolvent; he further denied that letters of administration had not been granted on Martin's estate, in this State, but stated that such administration was granted, and is now pending in the Probate Court of Hinds county, in this State. The answer stated that the purchase-money unpaid, viz. $2400, had been due since 1850, and that complainant, without just cause, had delayed payment of the same. He admitted that on account of the chancery suit a good title could not be made by Martin's heirs to complainant, and that he was the owner of the judgment sought to be enforced by assignment from Martin. He made his answer a cross-bill, and claimed a rescission of the contract, on account of complainant's delay in payment, and because the title could not be made to the land, and offered to refund the purchase-money to

complainant. The cross-bill did not show that any efforts had been made, either by Martin or his heirs, or Wilson, to procure a good title to the land.

His answer and cross-bill were filed after his demurrer to the original bill had been overruled. Bibb demurred to the cross-bill, which being overruled by the chancellor, he appealed.

The heirs of Martin answered the original bill, in substance the same as Wilson, but they did not join in the cross-bill.

*T. J.* and *F. A. R. Wharton,* for appellants.

*Geo. L. Potter,* for appellee.

FISHER, J., delivered the opinion of the court.

This is an appeal from a decree of the chancellor, overruling the demurrer of the complainant in the original bill to the defendant's cross-bill. To understand fully the question presented for decision, it will be necessary to make a brief statement of the facts set forth by the complainant.

The bill alleges that John Martin, of the late firm of Martin, Pleasants & Co., about the year 1846, sold to one Elijah Jones, a tract of land, situate in Rankin county, for the sum of six thousand dollars; that Martin executed a bond to Jones, covenanting to make a title on the payment of the purchase-money, with the further covenant, that if Martin failed to make the title, or was unable to do so, then he was to refund the purchase-money, with interest, and Jones was to pay rent for the land at a certain rate per annum. The bill further alleges that Jones died about the early part of the year 1847; that his heirs proposed to Martin to rescind the contract; that he agreed to do so, if another good purchaser could be substituted; that in accordance with said suggestion the complainant purchased the land, by agreeing in substance to carry out the contract of Jones, and to have the full benefit of the covenants contained in the bond for title. It is also alleged that the purchase-money, except the last instalment, has been paid; that the note to secure this instalment was transferred to the defendant Wilson, who is the complainant in the cross-bill; that Wilson being a member of the firm of Martin,

Pleasants & Co., was, at the time of the contract, under a special agreement between the partners, equally interested with Martin in the purchase-money; that Martin died in 1849, in the State of Louisiana, leaving his estate insolvent; that his heirs reside there. Under this state of the case it is insisted, that as the defendant Wilson was jointly interested with Martin in the purchase-money, he should either cause the title to be made to the complainant before receiving the money, or should become a party to the bond executed by Martin, for title, as the latter, having died, cannot perform his covenant.

It is not required of us to intimate an opinion, touching the merits of the bill. The statement of the case is merely made to understand the point which arises upon the demurrer to the cross-bill.

The object of the cross-bill, filed by the defendant Wilson, is to have the contract rescinded under that provision contained in the bond for title, that if Martin should fail, or be unable to make title, the purchase-money should be refunded, &c., and the purchaser should pay rent, &c. The cross-bill evidently proceeds upon the assumption that Martin might, under the terms of the contract, convey the land or rescind the contract, at his option; and that this being Martin's right, Wilson claims to exercise it as his right, inasmuch as he is interested in the proceeds of the sale.

The merits of the cross-bill are therefore made to depend upon the true construction of the title bond. Martin, in the first place, undertook to convey the land; but if, from any cause, he should be unable to do so, then he was to pay a certain sum of money as the consequence of his failure, which was to be a full discharge of his covenant. He was bound to use all reasonable diligence to perfect the title to the land, and to comply with the covenant in his bond. If, however, he could not so comply, then the parties agreed what should be the measure of damages. Under this view of the contract, we do not think, that Martin himself, if living, could maintain the cross-bill, and the defendant Wilson, certainly cannot claim more than the party to the contract could claim.

But there is still another objection: the rent covenanted to be paid, would belong to Martin's representatives, and not to Wilson.

They are not parties to the cross-bill, and the court will not enter-tain a bill which can administer but partial justice to the parties interested.

We are therefore of opinion, that the court below erred in over-ruling the demurrer.

Decree reversed, demurrer sustained, and cross-bill dismissed.